(No. 49122.—

EILEEN P. ROE, Adm'x, Appellant, v. ESTATE OF IRENE A. FARRELL, Incompetent, *et al.*, Appellees.

*Opinion filed January 20, 1978.*

Hynds & Hynds, of Morris (John W. Hynds, of counsel), for appellant.

John J. Black and James L. Peacock, of Morris, for appellees.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

The principal question presented on this appeal is whether, under its circumstances, the payment of Federal estate taxes should be equitably apportioned between the surviving tenants of property that was held in joint tenancy and the heirs at law of the decedent's intestate estate. If equitable apportionment is held to be proper, there is the additional question whether contribution may also be required of the surviving tenants for costs of administration and for attorneys' fees for services that

directly resulted in benefit to them.

Margaret Farrell died intestate in Grundy County on April 30, 1973, possessing property held in joint tenancy and also property subject to probate. Each class of property had to be included in her Federal gross estate for the calculation of the Federal estate tax. Two sisters and several nieces and nephews, who are the children of deceased brothers and sisters, are the heirs at law of her estate in probate. Her other property, consisting of a farm, bank accounts, and bank shares, was held in joint tenancy with the decedent's two surviving sisters, Marian and Irene Farrell. Slightly more than one-third of the value of these joint tenancy assets was declared in the decedent's gross estate for Federal estate tax purposes, which would indicate that the surviving joint tenants were able to show that they had made approximately a two-thirds contribution towards the acquisition of the jointly held property. See Int. Rev. Code of 1954, sec. 2040.

The decedent's intestate property was valued at $13,848. It consisted principally of an account receivable from a grain company. The value of the joint tenancy property declared in her Federal gross estate was $100,528. The Federal estate tax on the combined properties was $5,340.95. The total liability for the Federal estate tax, funeral expenses, debts, and costs of administration amounted to $18,273.30, a sum considerably in excess of her probate estate. There would be no Federal estate tax liability were it not for the inclusion of the decedent's joint tenancy property in the taxable estate.

The circuit court of Grundy County granted the petition of Eileen Roe, the administratrix of the estate of Margaret Farrell, asking that the conservator of Marian and Irene Farrell be ordered to contribute proportionally that amount of Federal estate tax resulting from the inclusion of the value of Margaret's share, *i.e.* $100,528, of the joint

tenancy property in the gross estate. The court's order for equitable apportionment of the Federal estate tax burden was grounded upon the holding in *In re Estate of Van Duser,* 19 Ill. App. 3d 1022. There the appellate court affirmed an order of the circuit court to apportion equitably the Federal estate tax between the decedent's intestate estate and the surviving tenants of property that had been jointly held with the decedent. The circuit court here also ordered that the cost of attorney and administratrix fees be proportionately shared by the intestate estate and the surviving tenants.

The appellate court reversed the circuit court (42 Ill. App. 3d 705), stating that any apportionment of the Federal tax burden and other expenses related to the joint tenancy property would amount to an amendment of sections 18—14 and 18—10 of the Probate Act of 1975 (Ill. Rev. Stat. 1975, ch. 3, pars. 18—14, 18—10) (formerly sections 207 and 202 of the Probate Act). The court considered too that the creation of the joint tenancy was a manifestation in itself of donative intent on the part of the decedent toward her sisters, Marian and Irene, and of an intent that those sisters should not have to bear any part of the burden of the Federal estate tax. We granted the administratrix's petition for leave to appeal.

Unlike our inheritance tax, which is a tax on the right of succession to the beneficial interest in the property of a decedent (*In re Estate of Greiner,* 412 Ill. 591, 594), the Federal estate tax is imposed on the transfer of the taxable estate as a whole (Int. Rev. Code of 1954, sec. 2001). If a decedent's probate assets are insufficient to satisfy the Federal estate tax, persons holding nonprobate assets includible by law in the Federal gross estate are liable to the extent of the value of those assets, and the tax becomes a lien against those assets if the tax is not satisfied in full. (Int. Rev. Code of 1954, sec. 6324.) There is, however, no express provision made in the Internal

Revenue Code for contribution from persons acquiring nonprobate assets, such as surviving tenants of jointly held property, to satisfy the estate tax, if the executor is able to satisfy all or a portion of the tax out of probate assets, except in the case of life insurance proceeds (Int. Rev. Code of 1954, sec. 2206) and property subject to appointment (Int. Rev. Code of 1954, sec. 2207).

This absence of any Federal provision for contribution by persons acquiring nonprobate assets led some to believe that it was the intent of Congress that equitable apportionment between probate and nonprobate assets to satisfy the tax should not be permitted. The Supreme Court of the United States in 1942 in *Riggs v. Del Drago,* 317 U.S. 95, 97-98, 87 L. Ed. 106, 110-11, 63 S. Ct. 109, 110, however, made it clear that the States were free, if they chose, to apportion the burden or "ultimate impact," as the court put it, of the estate tax. Following the holding in *Riggs,* statutes were enacted in many States to provide upon whom the burden of the Federal estate tax would rest. (See Annot., 71 A.L.R.3d 247 (1976).) In other jurisdictions the question has been resolved by the courts. It would appear that most of those States that have considered the question have allowed some type of apportionment of the tax burden. (See Annot., 68 A.L.R.3d 714 (1976).) There are opinions of this court containing *dicta* concerning the question (*e.g., People v. Pasfield,* 284 Ill. 450; *First National Bank v. Hart,* 383 Ill. 489), but the court has not heretofore directly addressed the question whether an apportionment of the estate tax burden may be allowed.

The appellate court here took the position that sections 18—10 and 18—14 of the Probate Act of 1975 (Ill. Rev. Stat. 1975, ch. 3, pars. 18—10, 18—14) (formerly sections 202 and 207 of the Probate Act) charge the probate assets with a decedent's Federal estate tax liability and costs of administration, thus requiring a complete

exhaustion of the probate assets before any contribution may be had from nonprobate assets. We do not consider that either section manifests a legislative intent that the "ultimate impact" (*Riggs v. Del Drago* (1942), 317 U.S. 95, 98, 87 L. Ed. 106, 111, 63 S. Ct. 109, 110) of the Federal estate tax burden must invariably fall upon the probate assets. Section 18—14 simply abolishes the distinction between a decedent's real and personal property in estate administration. See generally Joint Project of the Chicago Bar Association Committee on Continuing Legal Education with the Institute on Continuing Legal Education of the Illinois Bar, Senate Bill 673, Uniformity of Treatment of Real Estate and Personal Property in Probate Administration (1966).

Section 18—10 classifies claims which may be presented against a decedent's estate. The third class of claims in the paragraph is "Debts due the United States." But this classifying of claims and the designation of priorities for their payment is completely unrelated to the question of whether the burden of the Federal estate tax should be apportioned. The classifications in section 18—10, including the third class, were established prior to the Supreme Court's holding in *Riggs v. Del Drago* (1942), 317 U.S. 95, 87 L. Ed. 106, 63 S. Ct. 109. One simply cannot read into section 18—10 a legislative intent to preclude the requiring of contribution from surviving joint tenants for their proportionate share of the estate tax.

There is no basis for holding that the existence of the joint tenancy here disclosed any donative intent of the decedent toward her sisters, Marian and Irene. As we have stated, Margaret's contribution was approximately one-third of the value of the property, and her sisters contributed the balance.

We judge the circuit court correctly ordered an equitable apportionment of the estate tax between the surviving joint tenants and the intestate estate. The

nonprobate assets here generated the estate tax liability in large part, and to deny apportionment would inequitably favor the recipients of the nonprobate assets. The circuit court under the circumstances could properly invoke the holding in *In re Estate of Van Duser,* 19 Ill. App. 3d 1022, 1024, where it was said under closely resembling circumstances: "[L] ogic, reason, and simple justice dictate that, unless there is a contrary intention expressed by the decedent, as in a will in testate estates, the doctrine of equitable contribution should be invoked as to nonprobate assets to fairly distribute the Federal estate tax burden."

There has been, it would appear, reliance upon the holding in *Van Duser* in the profession. (See, for example, Illinois Institute for Continuing Legal Education, Illinois Estate Administration sec. 8.108 (1975); 4 W. James, Illinois Probate Law and Practice sec. 192.5a, n.52.53 (1951 & Supp. 1975); 5 W. James, Illinois Probate Law and Practice sec. 289.9, n.51.99 (1951 & Supp. 1975); 1A Horner, Probate Practice and Estates sec. 465.1, n.23.15 (4th ed. Supp. 1977); 2 Horner, Probate Practice and Estates sec. 804, n.6.10 (4th ed. Supp. 1977); and A. Fleming, *Apportionment of Federal Estate Taxes in Illinois—Current Status and Drafting Suggestions,* 63 Ill. Bar J. 522 (1975).) We consider that this reliance has not been misplaced, and that the *Van Duser* court was correct in making an equitable apportionment.

J. Pomeroy's Equity Jurisprudence (5th ed. 1941) in volume 2, section 411, at pages 157-58, describes the doctrine of equitable contribution which should be applied here:

"Finally, the most important doctrine, perhaps, which results from the principle, Equality is equity, is that of contribution among joint debtors, co-sureties, co-contractors, and all others upon whom the same pecuniary obligation arising from contract, express or

· implied, rests. This doctrine is evidently based upon the notion that the burden in all such cases should be equally borne by all the persons upon whom it is imposed, and its necessary effect is to equalize that burden whenever one of the parties has, in pursuance of his mere *legal* liability, paid or been compelled to pay the whole amount, or any amount greater than his proportionate share. No more *just* doctrine is found in the entire range of equity; and although it is now a familiar rule of the *law*, it should not be forgotten that its conception and origin are wholly due to the creative functions of the chancellor."

See also 2 F. Lawrence, Equity Jurisprudence sec. 742 (1929).

We consider that there also was error in reversing the circuit court's order to prorate the attorneys' fees and fees for the administratix. The equitable considerations which here support the apportionment of the Federal estate tax between the probate and the nonprobate assets logically extend to and are applicable to expenses incurred in behalf of the nonprobate assets.

The circuit court conducted a hearing at which considerable testimony was taken from the attorney for the administratrix concerning the time and service required by their attention to the nonprobate assets. The findings of the trial court ordering apportionment of their fees based on that testimony are not contrary to the manifest weight of the evidence and will not be set aside.

That principles of equitable apportionment should apply to attorneys' fees has been judicially recognized. In *In re Estate of Breault,* 63 Ill. App. 2d 246, 268-69, it was said: "There is a growing body of law that the doctrine of equitable contribution extends to attorneys' fees for services rendered to an executor with respect to nonprobate assets. In Cloutier v. Lowie, 343 Mass. 125, 177 N.E.2d 584 (1961), the Massachusetts Supreme Court considered the question where there was a probate estate of $4,656 and jointly held property of $100,000. The

attorney for the estate submitted a bill for fees to the executor for $4,500 which included services in making out returns for federal and state estate inheritance and other death taxes and settling such taxes. The probate judge found that the reasonable fee for legal services applicable to the probate estate was $500 and the balance 'should fairly be charged to the joint property (p. 585).' The court affirmed the decree as 'entirely consistent with the state's policy of equitable contribution (p. 586).' " See also *Industrial Trust Co. v. Budlong* (1950), 77 R.I. 428, 441, 76 A.2d 600, 607.

For the reasons stated, the judgment of the appellate court is reversed, and the judgment of the circuit court of Grundy County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*