*In re* ESTATE OF LYMAN L. GOWLING, Deceased.—(GENE PROSSER *et al.*, Respondents-Appellees, *v.* PEARL GOWLING, Petitioner-Appellant.)

Fourth District   No. 15374

Opinion filed October 18, 1979.—Rehearing denied November 20, 1979.

Gerald J. McGivern, of Wiseman, Shaikewitz, McGivern & Wahl, of Alton, for appellant.

Michael J. McDonald, of Jerseyville, for appellees.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

This appeal arises from an order of the circuit court directing the executor of the estate of Lyman L. Gowling to pay Federal estate taxes out of the probate assets of the decedent's estate including property specifically bequeathed. Pearl Gowling, the decedent's surviving spouse, appeals from that order, contending that the specific bequest, to her, which qualified for the Federal estate tax marital deduction should not have been consumed to meet Federal estate tax liability which was largely generated by nonprobate assets. In addressing this issue we are incidentally, but necessarily, confronted by the question of whether the doctrine of equitable apportionment of Federal estate taxes is applicable with respect to *testate* estates.

Briefly, the factual setting is as follows: The decedent died on November 21, 1977. He was survived by his widow, Pearl Gowling. In his will he made specific bequests to: his wife of $50,862.03; Gene Prosser of $18,370.28. The residue of his estate amounting to $1,211.04 was left to Virginia Prosser.

In April 1963, the decedent and his then spouse, Nettie Gowling, deeded two parcels of realty to Virginia Prosser and Lyman Fleming,

reserving life estates. Nettie Gowling predeceased the testator and he acted as the executor of her estate.

The decedent also left certain miscellaneous property and bank accounts in joint tenancy with his wife. The bank accounts were valued at $19,000.

Lyman E. Fleming was named the executor of the decedent's estate. On June 29, 1978, Fleming filed a petition to establish and assess Federal estate tax liability. The petition requested that the court apportion the estate tax liability among the recipients of the probate and nonprobate property in the ratio that each recipient's property bore to the gross estate subject to Federal estate tax.

The probate assets consisted of the aforementioned specific bequests and the residue of his estate which amounted to $70,443.35. The total amount of Federal estate taxes was $72,142.62. This tax resulted from the inclusion of the remainder interests held by Lyman Fleming and Virginia Prosser valued at $232,600 and $114,561.04, respectively, and the joint accounts held by the decedent and his wife.

Pearl Gowling filed an answer, affirmative defense, and objection to the personal representative's petition to assess Federal estate tax liability. She contended that it would be error to require the surviving spouse to contribute to the payment of a proportionate share of the Federal estate tax when the interest she received qualified for the marital deduction and thus did not generate a Federal estate tax liability to the estate.

Thereafter, Lyman Fleming, in his status or capacity as a remainderman of one of the parcels of real estate held by the decedent, and Virginia Prosser, the remainderman of the other parcel, filed appearances in the action. It was asserted on their behalf that, contrary to the relief sought in the petition of the executor, there should be no apportionment of the Federal estate taxes. It was their position that the deed of decedent and his first wife, Nettie Gowling, indicated a donative intent on the part of the donors to convey the real estate without encumbrances including any share of estate taxes generated by the gift.

On December 4, 1978, a hearing was held on the executor's petition and the respective answers and defenses which were filed. Following the hearing, the court determined that the testator had manifested an intent to make the Federal estate taxes payable out of the probate assets of the estate. The court relied on a provision in the decedent's will which provided *inter alia*:

> "I give the executor the following powers and discretion, in each case to be exercisable without court order:
>     * * *
>
> (b) to settle claims in favor of or against my estate."

The court reasoned that since debts due the United States (including

Federal estate taxes) were listed under section 18—10 of the Probate Act (Ill. Rev. Stat. 1977, ch. 110½, par. 18—10) as claims having priority over distribution to legatees or devisees, the testator intended to pay the estate tax debt from the probate assets.

We first address the trial court's determination that the decedent manifested an express intent that Federal estate taxes be paid only out of the probate assets of his estate. Our analysis to a large degree follows that adopted in the recent Illinois Supreme Court opinion of *Roe v. Estate of Farrell* (1978), 69 Ill. 2d 525, 372 N.E.2d 662, for we believe much of what was stated there is applicable in the instant case.

■■ We begin with the acknowledgment that the Federal estate tax is imposed on the transfer of the taxable estate as a whole (Int. Rev. Code of 1954, 26 U.S.C. §2001), and not on the individual beneficiary's right of succession. This aspect of the estate tax, however, does not necessarily prohibit contribution for taxes from persons acquiring nonprobate assets, for it is State law which determines how the burden or "ultimate impact" of estate tax should be borne. *Riggs v. Del Drago* (1942), 317 U.S. 95, 97-98, 87 L. Ed. 106, 110-11, 63 S. Ct. 109, 110; *Roe.*

■■ Here the trial court, considering the power of the executor to settle "claims" against the estate in conjunction with section 18—10 of the Probate Act, determined that the testator's intent was that estate taxes be paid, to the extent possible, solely from probate assets. In *Roe*, the court reasoned that:

"[T]his classifying of claims [under section 18—10] and the designation of priorities for their payment is completely unrelated to the question of whether the burden of the Federal estate tax should be apportioned. * * * One simply cannot read into section 18—10 a legislative intent to preclude the requiring of contribution from surviving joint tenants for their proportionate share of the estate tax." 69 Ill. 2d 525, 531, 372 N.E.2d 662, 665.

■■ We acknowledge the respondent's contention that this language from *Roe* is not controlling because there the court was dealing with an intestate estate. We find, however, that the court's analysis and reasoning with respect to section 18—10 is equally persuasive when applied to a testate estate. If section 18—10 does not represent a legislative pronouncement against contribution with respect to intestate estates, then logically it must be similarly viewed with respect to testate estates. Respondents' attempt to distinguish *Roe* on this basis lacks merit.

Thus, we are left to determine whether the decedent intended the estate tax liability to be borne by the probate assets, by looking solely to the language of the will. The mere recital that the executor is to pay the claims of the estate seems to lack any indication of who should bear the burden of estate taxes. In other jurisdictions, the simple direction in a will

that the executor is to pay all just debts or obligations is not viewed as a specific direction concerning the payment of death taxes nor does it necessarily constitute a direction against apportionment. See generally Annot., 70 A.L.R.3d 630 §6[a] (1976).

■ Further, it seems unlikely that a testator would make specific bequests only to have them absorbed by estate taxes. In view of the rather ambiguous language we are hesitant to imply or presume that the testator intended such a result. Under these facts, the testator's mere recital that claims against his estate should be paid fails to manifest any intention of the testator with respect to the burden of estate taxes. Thus, absent any direction by the testator, we resort to the initial premise that the burden of estate taxes is determined by State law. *Riggs.*

■ We conclude, in view of the supreme court opinion in *Roe*, that the doctrine of equitable apportionment of Federal estate taxes is applicable even with respect to testate estates. In *Roe*, the court quoting from the appellate decision in *In re Estate of Van Duser* (1974), 19 Ill. App. 3d 1022, 313 N.E.2d 228, stated that " '[L]ogic, reason, and simple justice dictate that, unless there is a contrary intention expressed by the decedent, as in a will in testate estates, the doctrine of equitable contribution should be invoked as to nonprobate assets to fairly distribute the Federal estate tax burden.' " 69 Ill. 2d 525, 532, 372 N.E.2d 662, 665.

■ The respondents, relying on two earlier appellate court decisions, maintain, however, that the holding in *Roe* was limited to intestate estates. In *In re Estate of Fairchild* (1974), 21 Ill. App. 3d 459, 315 N.E.2d 658, the residuary legatees of the decedent's estate argued that the estate taxes should be apportioned with respect to property which had been specifically bequeathed by the decedent. In rejecting the position of the residuary legatees, this court stated:

> "If apportionment in Illinois is to come where a will is involved, it should come through the legislature and not piecemeal on an *ad hoc* case to case basis. * * *
>
> We are not unaware of the decision in *In re Estate of Van Duser*, 19 Ill. App. 3d 1022, 313 N.E.2d 228, but fact-wise and issue-wise, it is not within the perimeter of the issues or the facts presented here." 21 Ill. App. 3d 459, 461-62, 315 N.E.2d 658, 660-61.

This reasoning was based in large part on the opinion in *In re Estate of Phillips* (1971), 1 Ill. App. 3d 813, 275 N.E.2d 685. There the court held in effect that where a will is involved the burden of the Federal estate tax falls on the residuary estate to the extent it is adequate. Thus, the court held that the decedent's stepson, the devisee of a farm valued at $235,000 was not required to contribute towards the $58,000 estate tax liability.

We note, however, that both *Fairchild* and *Phillips* dealt with a rejection of the concept of contribution between the various *probate*

assets of a testate estate. In neither of these cases was the question of contribution between probate and nonprobate assets (the issue raised here and addressed in *Roe*) before the court. Moreover, the court in *Phillips* specifically distinguished from its holding the present situation where substantial *nonprobate* assets are largely responsible for generating the Federal estate tax liability. The court reasoned that the argument for equitable apportionment has little weight where there are no trust assets or jointly owned assets which do not form a part of the probate estate but increase the amount of estate tax due. Conversely, if there are such nonprobate assets increasing the tax liability of the estate there is a strong argument in favor of contribution.

■■ We conclude that two distinct rules concerning the burden of estate tax liability may be concurrently applied with respect to a testate estate. As between the various probate assets distributed by a testator, Illinois follows the rule enunciated in *Phillips* and *Fairchild*, *i.e.*, the burden of Federal estate taxes falls on the residuary assets. (See also *Lawless v. Lawless* (1958), 17 Ill. App. 2d 481, 150 N.E.2d 646.) However, to the extent nonprobate assets exist which generate estate tax liability contribution may be sought on a proportionate basis. (*Roe.*) The mere execution of a will, without more, does not negate the application of this doctrine.

■■■ Absent a contrary direction, there are sound reasons for not requiring contribution within the probate estate, while at the same time apportioning the tax burden between the probate and nonprobate assets. Within the probate estate, the burden on the residue rule prefers specific over general bequests and devises in the allocation of tax burdens and for that reason is not manifestly unfair or a great distance apart from what a decedent's desires might ordinarily be assumed to be. (*Phillips.*) On the other hand, "[i]t is unfair to deplete the residue and general [probate] estate for the benefit of nontestamentary assets when the decedent may not have considered such assets as a part of his estate for death tax purposes but which are included under the broad concept of what constitutes the 'gross taxable estate.' " A. Fleming, *Apportionment of Federal Estate Taxes in Illinois—Current Status and Drafting Suggestions*, 63 Ill. Bar J. 522, 523 (1975).

■■■ Finally, we reach the issue of whether the surviving spouse's bequest, which qualified for a marital deduction for Federal estate tax purposes (Int. Rev. Code of 1954, 26 U.S.C. §2056) should be subject to a proportionate share of the total estate tax liability. In the present case, the total gross estate was $436,943.35. In arriving at the taxable estate, an amount of $60,887.98 was deducted as the amount of the marital deduction. We conclude that the surviving spouse is not required to contribute to Federal estate taxes with respect to the above amount since

that sum did not generate additional tax liability. We acknowledge that there is a split of authority on this question (see generally Annot., 68 A.L.R.3d 714, 782-89, §16 (1976)), but we believe the better-reasoned rule in this case allows an exception to the principle of contribution. The concept of equitable contribution would be violated if the surviving spouse were required to pay a proportionate share of Federal estate taxes due when the gift, to the extent it qualified, did not generate any tax liability. See *Estate of Whipple v. United States* (6th Cir. 1969), 419 F.2d 494; *Pitts v. Hamrick* (4th Cir. 1955), 228 F.2d 486.

Thus, this cause is reversed and remanded with directions that the circuit court determine and charge probate and nonprobate assets with that portion of the total tax obligation which is attributable to the assets received, but excluding that portion of any property which did not contribute to estate tax. The proportionate share of tax attributable to the probate assets of the estate (excluding the property qualifying for the marital deduction) shall be borne to the extent possible by the residue of those assets, and upon extinguishment of that sum shall be paid out of the remaining probate assets according to the rules on abatement.

Reversed and remanded with directions.

MILLS and TRAPP, JJ., concur.