*In re* ESTATE OF NANCY McPHERSON GRANT, Deceased.—(W. RAY-MOND GRANT, Petitioner-Appellee, *v.* THE FIRST NATIONAL BANK OF LAKE FOREST, Co-executor of the Estate of Nancy McPherson Grant, Respondent-Appellant.)

Second District   No. 79-204

Opinion filed November 7, 1979.

Ralph J. Boches, of Deerfield, for appellant.

Behanna & Pasquesi, of Highland Park, for appellee.

Mr. JUSTICE NASH delivered the opinion of the court:

The First National Bank of Lake Forest, as executor of the estate of Nancy Grant, brings this appeal under Supreme Court Rule 304(b)(1) (Ill. Rev. Stat. 1975, ch. 110A, par. 304(b)(1)) from an order directing it to compute the elective share of the surviving spouse prior to the deduction of Federal estate taxes. The central issue is whether the rule of equitable apportionment announced in *Roe v. Estate of Farrell* (1978), 69 Ill. 2d 525, 372 N.E.2d 662, applies to exempt from Federal estate taxation the

statutory share taken by a surviving spouse under section 2—8 of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, par. 2—8). We hold it does not and therefore reverse the order of the circuit court of Lake County.

Nancy McPherson Grant died on December 24, 1976. She was survived by her husband of 38 years, W. Raymond Grant, her son, Arthur Grant, and three grandchildren. The decedent's will was admitted to probate on March 1, 1977, and on that same date a petition was filed by the husband renouncing the will pursuant to section 2—8. Under the provisions of subsection 2—8(a) the husband is entitled to a one-third share of the entire estate "after payment of all just claims" and both parties agree this share fully qualifies for the marital deduction under Federal tax law. 26 U.S.C. §2056(d)(3) (1976).

On June 8, 1978, the husband filed a petition to recover his statutory share without any deduction for Federal estate taxes. He argued that under the rule of equitable apportionment announced in *Roe v. Estate of Farrell* (1978), 69 Ill. 2d 525, 372 N.E.2d 662, the burden of the estate tax must be apportioned among those assets which generate the tax. He concluded that the one-third share he is entitled to receive under Illinois law generates no tax since it qualifies for the marital deduction and is not includible in decedent's taxable estate. (26 U.S.C. §§2001, 2051, 2056 (1976).) The trial judge apparently agreed and ordered the one-third share to be computed before deduction of Federal estate taxes. This appeal followed.

■■ The marital deduction was made a part of the Internal Revenue Code in 1948 in order to allow common-law jurisdictions to confer upon their citizens the same tax saving advantages available to residents of community property States. (*In re Estate of Mosby* (1976), 170 Mont. 463, 554 P.2d 1341.) This equality was to be achieved by permitting a surviving spouse to take up to 50 percent of the decedent's estate free of Federal estate taxes. (26 U.S.C. §2056(c)(1) (1976).) Petitioner concedes, however, that congress left it to the States to determine how the estate tax burden should be distributed (*Riggs v. Del Drago* (1942), 317 U.S. 95, 87 L. Ed. 106, 63 S. Ct. 109; *Roe v. Estate of Farrell*) and whether or not the marital deduction should be assessed with a proportionate share. (*In re Estate of Mosby; In re Estate of Glover* (1962), 45 Haw. 569, 371 P.2d 361, 366.) Resolution of the question before us, therefore, depends upon the interpretation of State rather than Federal law.

The controlling statute in this case is section 2—8 of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, par. 2—8) which provides in part as follows:

"(a) If a will is renounced by the testator's surviving spouse, whether or not the will contains any provision for the benefit of the

surviving spouse, the surviving spouse is entitled to the following share of the testator's estate *after payment of all just claims*: 1/3 of the entire estate if the testator leaves a descendant or ½ of the entire estate if the testator leaves no descendant." (Emphasis added.)

Section 18—10 defines claims which may be presented against an estate to include "debts due the United States":

"All claims against the estate of a decedent are divided into classes in the manner following:

1st: Funeral expenses and expenses of administration. For the purposes of this paragraph funeral expenses paid by any person, including a surviving spouse, are funeral expenses and funeral expenses include reasonable amounts paid for a burial place, marker thereon and care thereof.

2nd: The surviving spouse's or child's award.

3rd: Debts due the United States.

4th: Money due employees of the decedent of not more than $800 for each claimant for services rendered within 4 months prior to the decedent's death and expenses attending the last illness.

5th: Money and property received or held in trust by decedent which cannot be identified or traced.

6th: Debts due this State and any county, township, city, town, village or school district located within this State.

7th: All other claims."

Ill. Rev. Stat. 1977, ch. 110½, par. 18—10.

■■ The language "all just claims" and "[d]ebts due the United States" was first inserted in the Probate Act nine years before the marital deduction was enacted. (Ill. Rev. Stat. 1939, ch. 3, pars. 168, 354.) Obviously the General Assembly did not intend by the use of this language to either implement or deny a tax advantage not then in existence. The Probate Act, however, has been substantially revised since 1948 without any change in the quoted language. This inaction is particularly significant in light of the only other case to interpret sections 2—8 and 18—10. *Northern Trust Co. v. Wilson* (1951), 344 Ill. App. 508, 101 N.E.2d 604, held that the Federal estate tax is a "just claim" which must be deducted before the elective share is determined. Because the interpretation given sections 2—8(a) and 18—10 has not evoked an amendment or enactment of an apportionment statute leaving intact the marital deduction, we presume that *Wilson* accurately reflects the intention of the General Assembly. (*People v. Hairston* (1970), 46 Ill. 2d 348, 353, 263 N.E.2d 840, 845.) Decisions in other jurisdictions to the contrary are unpersuasive (*e.g., Spurrier v. First National Bank* (1971), 207 Kan. 406, 485 P.2d 209).

■■ On the basis of both sections 2—8(a) and 18—10 it is clear to us that

the surviving spouse who renounces a will is entitled to a fractional share of the decedent's "net" estate, the estate remaining after payment of all obligations, including taxes, funeral expenses and costs of administration.

Petitioner contends that the recent recognition of equitable apportionment in *Roe v. Estate of Farrell* (1978), 69 Ill. 2d 525, 372 N.E.2d 662, necessitates a different interpretation of section 2—8. We disagree. The decedent's taxable estate in *Roe* consisted of approximately $14,000 worth of probate assets and $100,000 worth of property held in joint tenancy. The jointly held property caused estate taxes and costs of administration to exceed the value of the probate estate. The circuit court directed the surviving joint tenants to contribute their proportionate share of the Federal estate tax and the supreme court affirmed, holding that in the absence of a statute or will provision to the contrary equity requires the tax to be apportioned among all the assets which make up the taxable estate.

Petitioner contends that application of equitable apportionment in the context of this case is but a logical extension of the *Roe* analysis. We would be inclined to agree were it not for the plain language of section 2—8(a). *Roe* authorized equitable apportionment between probate and nonprobate assets in the absence of a statute or will provision requiring a different tax distribution. The court rejected the argument that sections 18—10 and 18—14 of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, pars. 18—10, 18—14) (formerly sections 202 and 207) govern allocation of the tax burden, but did not have occasion to consider the impact of section 2—8(a). *Farley v. United States* (Ct. Cl. 1978), 581 F.2d 821, relied upon by petitioner, fails to appreciate this distinction and is for that reason unpersuasive.

Our interpretation of section 2—8(a) is consistent with those of other jurisdictions which have similarly defined the elective share as a fraction of the estate remaining after payment of claims, debts or expenses. (See Annot., 67 A.L.R.3d 199, 209-17 (1975).) More significantly, several jurisdictions which have accepted equitable apportionment in other contexts (between probate and nonprobate assets) have specifically refused to apply it in the face of statutes requiring the elective share to be computed after deduction of estate taxes. *In re Estate of Mosby* (1976), 170 Mont. 463, 554 P.2d 1341 ("after the payment of * * * any and all taxes, including * * * federal estate taxes"); *Old Colony Trust Co. v. McGowan* (1960), 156 Me. 138, 163 A.2d 538 (after payment of "debts, funeral charges and charges of settlement"); *In re Estate of Glover* (1962), 45 Haw. 569, 371 P.2d 361 ("after payment of all just debts"); *Campbell v. Lloyd* (1954), 162 Ohio St. 203, 122 N.E.2d 695 (elective share computed from "net estate").

We conclude that section 2—8(a) plainly requires the elective share

of the surviving spouse to be computed after deduction of Federal estate taxes even though the share fully qualifies for the marital deduction. The general policy favoring apportionment of taxes announced in *Roe* is inapplicable where the General Assembly has expressed a contrary view.

For these reasons the order of the circuit court of Lake County is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

LINDBERG and SEIDENFELD, JJ., concur.