*In re* ESTATE OF HOWARD C. COMSTOCK, Deceased.—(EVA MINOR, Ex'r of the Estate of Howard C. Comstock, Petitioner, *v.* ILIAH COMSTOCK, Respondent-Appellant.—(KAREN CHEESMAN, Respondent-Appellee).)

Third District No. 79-273

Opinion filed December 7, 1979.

934

STOUDER, P. J., specially concurring.

Charles E. Ruch, Jr., of Nutting, Thacker, Sacks & Paulauskis, of Kankakee, for appellant.

Frank R. Edwards, of Katz, McAndrews, Durkee & Telleen, of Rock Island, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal by Iliah Comstock from the judgment of the Circuit Court of Kankakee County (in her deceased husband's estate proceedings) that Iliah's elective share as a surviving spouse (Ill. Rev. Stat. 1977, ch. 110½, par. 2—8) should be computed from the assets available after deduction of all of the Federal estate tax obligation. Counsel for Iliah had argued that the elective share should be computed based on assets available prior to payment of Federal estate taxes, since no Federal estate tax is payable on Iliah's elective share. The issue presented in this court, consequently, is whether the surviving spouse's elective share should be computed before or after deduction of the Federal estate tax liability of the estate, considering the fact that no Federal estate tax was payable on Iliah's elective share.

The facts necessary for an understanding of this appeal are few. Howard C. Comstock died in 1976, survived by his wife, Iliah Comstock, and a daughter, Karen Cheesman, from a previous marriage. Howard Comstock's will was made and executed in 1947, prior to his marriage to Iliah. The will made no provision for Iliah, and it made no specific provision for payment of Federal estate taxes. As a result of such omission, Iliah Comstock filed a renunciation of will in the probate proceedings concerning her deceased husband's estate and elected to take her statutory share. Iliah's share, according to the statute (Ill. Rev. Stat. 1977, ch. 110½, par. 2—8), was one-third of the decedent's entire estate. In the process of administering the estate, the executor petitioned the circuit court for instructions regarding the distribution and settlement of the estate. The executor asked the court whether Iliah Comstock's share should be one-third of the estate without deduction for payment of Federal estate taxes charged against the estate or whether she should receive one-third of the net estate remaining after payment of such taxes.

The circuit court held that the elective share should be computed after payment of all of the Federal estate tax. It is from this judgment that Iliah appeals.

Under the Federal estate tax laws, the gross estate upon which such taxes are levied is reduced by amounts qualifying as "marital deductions." (Section 2056(a) of the Internal Revenue Code of 1954, 26 U.S.C. §2056(a).) The marital deduction covers certain "qualified" property passing from a decedent to a surviving spouse and is limited by statute to amounts specified in the act, but normally, in larger estates, to 50% of the value of the adjusted gross estate. (26 U.S.C. §2056(b), (c), (d).) In the instant case, all of the widow's elective share is exempt from Federal estate tax. Iliah was to receive one-third of her deceased husband's entire estate by virtue of her renunciation of the will, and counsel, accordingly, contends that her one-third share does not give rise to any Federal estate taxes by reason of the marital deduction and should, therefore, in equity, not be burdened by payment of the Federal estate taxes imposed upon the remaining property, which may be subject to Federal estate taxes. A burden of that type would be imposed if a computation of the surviving spouse's share is made *after* payment or computation of Federal estate taxes. It is argued that equitable apportionment of the Federal estate tax burden, when an elective share qualifies as a marital deduction, should result in determining that the widow's share from the entire estate should be computed before reduction of the estate by the amount of Federal estate taxes payable.

Appellant finds support for application of the doctrine of equitable apportionment to the issue of Federal estate tax liability on estates in the Illinois Supreme Court case of *Roe v. Estate of Farrell* (1978), 69 Ill. 2d 525, 372 N.E.2d 662. That case dealt specifically with the question of whether, when no specific provision had been made by the testator, the Federal estate tax burden ought to be equitably shared by holders of both probate and nonprobate assets, and not simply borne by holders of the probate assets. The court in that case adopted a rule of equitable apportionment as to the burden of Federal estate taxes, and found that such taxes should be borne proportionately by those assets which gave rise to that Federal estate tax liability. (69 Ill. 2d 525, 532.) Although *Roe v. Farrell* did not directly address the question of the burden of Federal estate taxes when a surviving spouse files a renunciation of will, counsel argues, we believe correctly, that the court's adoption of the doctrine of equitable apportionment logically extends to situations such as are presented in the instant case. Although not binding upon us, some support for such extension is to be found in the United States Court of Claims decision in *Farley v. United States* (Ct. Cl. 1978), 581 F.2d 821. The issue in *Farley* was precisely the same as that now before us, *i.e.*, whether the

*surviving spouse's* elective share, under section 2—8 of the Illinois Probate Code, should be computed before or after payment or computation of Federal estate taxes. The court in *Farley* took the rule of equitable apportionment as set forth in *Roe v. Farrell* and applied it to the situation where the elective share of a surviving spouse qualified as a marital deduction and, therefore, not subject to Federal estate taxes. The Court of Claims held that, were the question now to be presented to the Illinois Supreme Court, it would apply the rule of equitable apportionment adopted in *Roe v. Farrell* to the elective share situation before the court in *Farley* and would find that the elective share should be computed based on the entire estate, and not on the estate as reduced after payment or computation of Federal estate taxes. (581 F.2d 821, 834.) In so holding, the Court of Claims was forced to conclude that a previous Illinois appellate decision, *Northern Trust Co. v. Wilson* (1951), 344 Ill. App. 508, 101 N.E.2d 604, had been effectively overruled by the decision in *Roe v. Farrell.* Counsel for Karen Cheesman, the daughter, assert that the *Northern Trust Co. v. Wilson* case was still viable. They argue that *Roe v. Farrell* must be limited to its factual situation, probate and nonprobate assets, and not extended to the situation presented in the instant case.

■■ Congress, in imposing the Federal estate tax, has not determined how the burden of Federal estate taxes is to be allocated in estate proceedings. It has left to State law the determination as to the ultimate thrust of the tax. Therefore, the question of the ultimate burden of Federal estate taxes is one of State, rather than Federal, law. (*Riggs v. Del Drago* (1942), 317 U.S. 95, 87 L. Ed. 106, 63 S. Ct. 109; *Roe v. Farrell* (1978), 69 Ill. 2d 525, 372 N.E.2d 662.) Since this issue has been left for decision by the individual States, we turn, initially, to any statutory provisions bearing upon the issue. In this case, three statutory provisions may be involved, sections 2—8, 18—10, and 18—14 of the Probate Act. (Ill. Rev. Stat. 1977, ch. 110½, pars. 2—8, 18—10, 18—14.) We set such provisions out in pertinent part. Section 2—8 states:

> "(a) If a will is renounced by the testator's surviving spouse, whether or not the will contains any provision for the benefit of the surviving spouse, the surviving spouse is entitled to the following share of the testator's estate after payment of all just claims: 1/3 of the entire estate if the testator leaves a descendant or ½ of the entire estate if the testator leaves no descendant." (Ill. Rev. Stat. 1977, ch. 110½, par. 2—8.)

Section 18—10 provides:

> "All claims against the estate of a decedent are divided into classes in the manner following:
> 1st: Funeral expenses and expenses of administration. ° ° °
> 2nd: The surviving spouse's or child's award.

3rd: Debts due the United States.

4th: Money due employees of the decedent * * *.

5th: Money and property received or held in trust by decedent which cannot be identified or traced.

6th: Debts due this State and any county, township, city, town, village or school district located within this State.

7th: All other claims." (Ill. Rev. Stat. 1977, ch. 110½, par. 18—10.)

Section 18—14 states:

"All the real and personal estate of the decedent and the income therefrom during the period of administration are chargeable with the claims against the estate, expenses of administration, estate and inheritance taxes and legacies without distinction except as otherwise provided in this Act or by decedent's will * * *." (Ill. Rev. Stat. 1977, ch. 110½, par. 18—14.)

We do not see in these provisions any indication of a legislative intent that the burden of the Federal estate tax is to be borne by a surviving spouse's share which qualifies for marital deduction, thereby being wholly exempt from Federal estate taxes. The supreme court in *Roe v. Farrell* indicated that neither 18—10 nor 18—14 established any legislative intent as to the ultimate impact of the Federal estate tax burden.

"Section 18—14 simply abolishes the distinction between a decedent's real and personal property in estate administration. See generally Joint Project of the Chicago Bar Association Committee on Continuing Legal Education with the Institute on Continuing Legal Education of the Illinois Bar, Senate Bill 673, Uniformity of Treatment of Real Estate and Personal Property in Probate Administration (1966).

Section 18—10 classifies claims which may be presented against a decedent's estate. The third class of claims in the paragraph is 'Debts due the United States.' But this classifying of claims and the designation of priorities for their payment is completely unrelated to the question of whether the burden of the Federal estate tax should be apportioned." (69 Ill. 2d 525, 531.)

So, likewise, in the instant case, whether the Federal estate tax liability of the estate is considered an "expense of administration" (*People v. Pasfield* (1918), 284 Ill. 450, 120 N.E. 286; *People v. McCormick* (1927), 327 Ill. 547, 158 N.E.2d 861) or a "debt due the United States" (*Roe v. Farrell* (1978), 69 Ill. 525, 372 N.E.2d 662) in section 18—10's classification scheme, that section does not indicate how the burden of tax is to be apportioned. Neither do we find in the language of section 2—8, entitling the surviving spouse to his or her share of the entire estate "after payment of all just claims," a manifest legislative intent that the elective share is to

be computed after payment of Federal estate taxes. The statute's only express direction with respect to *computation* of the elective share is that it is to be either one-half or one-third of the "entire estate," depending upon the existence of a descendant.

The language relied upon by appellee and by the court in *Northern Trust v. Wilson*, "entitled to the following share after payment of all just claims," is not directed at computation of the share, but it merely establishes that before the surviving spouse is entitled to receive his or her share, all just claims must be paid. We are unable to see in that language a legislative intent that the share is to be computed based upon the entire estate as reduced by payment or computation of Federal estate taxes. Section 2—8 does not state that the just claims must be paid before computation of the elective share. It states that a surviving spouse is entitled to the elective share after payment of the claims. The share specified in the statute, to which the spouse is entitled, is one-third or one-half of the "entire estate."

Since we find that these provisions of the Probate Act do not manifest a legislative intent that the surviving spouse's share is to be computed after deduction for Federal estate taxes, we are not precluded from invoking the doctrine of equitable apportionment, which we conclude should be applied. (*Roe v. Farrell* (1978), 69 Ill. 2d 525, 531-32.) Although the issue therein concerned the Federal estate tax burden as between probate and nonprobate assets, the reasoning of the court in *Roe v. Farrell* underlying its application of an equitable apportionment is fully as persuasive in the instant case. In affirming the circuit court's equitable apportionment, our supreme court noted:

> "The nonprobate assets here generated the estate tax liability in large part, and to deny apportionment would inequitably favor the recipients of the nonprobate assets. The circuit court under the circumstances could properly invoke the holding in *In re Estate of Van Duser*, 19 Ill. App. 3d 1022, 1024, where it was said under closely resembling circumstances: '[L]ogic, reason, and simple justice dictate that, unless there is a contrary intention expressed by the decedent, as in a will in testate estates, the doctrine of equitable contribution should be invoked as to non-probate assets to fairly distribute the Federal estate tax burden.'
> \* \* \*

J. Pomeroy's Equity Jurisprudence (5th ed. 1941) in volume 2, section 411, at pages 157-58, describes the doctrine of equitable contribution which should be applied here:

> 'Finally, the most important doctrine, perhaps, which results from the principle, Equality is equity, is that of contribution among joint debtors, co-sureties, co-contractors,

.and all others upon whom the same pecuniary obligation arising from contract, express or implied, rests. This doctrine is evidently based upon the notion that the burden in all such cases should be equally borne by all the persons upon whom it is imposed, and its necessary effect is to equalize that burden whenever one of the parties has, in pursuance of his mere *legal* liability, paid or been compelled to pay the whole amount, or any amount greater than his proportionate share. No more *just* doctrine is found in the entire range of equity; and although it is now a familiar rule of the *law*, it should not be forgotten that its conception and origin are wholly due to the creative functions of the chancellor.'

See also 2 F. Lawrence, Equity Jurisprudence sec. 742 (1929)." 69 Ill. 2d 525, 531-33.

■■ When the doctrine of equitable apportionment is applied in the instant case, it clearly calls for computation of the surviving spouse's elective share of the entire estate before any deduction is made for payment or computation of Federal estate taxes. This is so for the reason that, as already noted, the elective share, whether one-third or one-half, will usually qualify under the Federal act as a marital deduction, and the size of the estate, for the purposes of Federal estate tax computation, will be reduced accordingly. As is true in the instant case, no Federal estate tax is imposed upon the surviving spouse's elective share, and the holders of the estate assets, subject to Federal estate taxes, will receive a benefit from the reduction of the size of the taxable estate because of the marital deduction allowable as to the elective share of Iliah. In those circumstances, equity requires that the elective share, which has generated no estate tax liability, should not be burdened by computation or payment of that tax. (*Roe v. Farrell* (1978), 69 Ill. 2d 525, 372 N.E.2d 662. See also *Farley v. United States* (Ct. Cl. 1978), 581 F.2d 821; Annot., 67 A.L.R.3d 199 (1975).) Accordingly, we conclude that the surviving spouse's elective share, under section 2—8, is to be computed based upon the entire estate and not upon the estate remaining after payment or computation of Federal estate taxes. We observe, however, for guidance in other cases, that to the extent that an elective share does give rise to Federal estate tax liability, or to administrative expenses or inheritance taxes, it will also be required, under the doctrine of equitable apportionment, to bear its equitable share of those burdens. The doctrine of equitable apportionment should, and will be, applied in this case to relieve Iliah of any Federal estate tax burden since her elective share of the estate qualifies as a marital deduction.

For the reasons stated, therefore, the judgment of the Circuit Court

of Kankakee County is reversed and the cause is remanded for further proceedings in accordance with the views expressed in this opinion, and that Iliah's elective share shall be determined as one-third of the entire net estate without deduction for Federal estate taxes.

Reversed and remanded with directions.

STENGEL, J., concurs.

Mr. PRESIDING JUSTICE STOUDER, specially concurring:

I agree that *Roe v. Farrell* (1978), 69 Ill. 2d 525, 372 N.E.2d 662, applies the doctrine of equitable apportionment with respect to the payment of Federal estate taxes and that such precedent is ample authority for the result reached by the court with which I join.

However, I am constrained to note that we are extending the application of this doctrine without benefit of legislative authorization. In my judgment this subject matter is more appropriately dealt with by legislation so that the limits of the doctrine can be ascertained and described.

In *Roe* the court held nonprobate assets should bear their share of the Federal estate taxes. Are there not other expenses particularly those involving the administration of the estate, *i.e.*, administrator's fees and attorney's fees involved both in probate matters and Federal tax return matters which might logically claim the right of apportionment?

In the instant case we have extended equitable apportionment to the exemption created for the surviving spouse where there has been an election to renounce under a will. I suppose that by way of analogy and again without legislative authority the same rule would apply if the decedent would die intestate leaving a surviving spouse or would apply where a testator left property by will to a surviving spouse describing such property in terms of a percentage of the estate. In this connection it should be noted that the *Roe* opinion is bottomed on the absence of any direction of the testator concerning the payment or the source thereof of Federal estate taxes. In renunciation cases as well as intestate cases, the statute is usually considered to be the source of determining the decedent's intentions. To say that the statute does not prohibit or forbid an application of the doctrine of equitable apportionment suggests the necessity for legislation in this area to avoid the mischief that may result from the uncertainties on how far the doctrine is or should be applied.