83 Ill.2d 379 (1980)
415 N.E.2d 416
In re ESTATE OF NANCY McPHERSON GRANT, Deceased (The First National Bank of Lake Forest, Ex'r, Appellee,
v.
J. Victor Grant, Ex'r, Appellant).
No. 52913.
Supreme Court of Illinois.
Opinion filed December 19, 1980.
Rehearing denied January 29, 1981.
*380 Behanna & Pasquesi, P.C., of Highland Park (Theodore A. Pasquesi, of counsel), for appellant.
Ralph J. Boches, of Deerfield, for appellee.
Judgment affirmed.
MR. JUSTICE RYAN delivered the opinion of the court:
The issue raised by this appeal is whether the share of a surviving spouse who renounces a will is determined before or after the payment of the Federal estate tax. The Lake County circuit court entered an order requiring the executor of the estate of Nancy M. Grant to calculate the renouncing husband's share of the estate prior to the payment of the Federal estate tax. The appellate court reversed, requiring the surviving spouse's share to be calculated after the Federal estate tax was paid. (77 Ill. App.3d 866.) We granted leave to appeal under our Rule 315 (73 Ill.2d R. 315).
Nancy M. Grant died on December 24, 1976. She was survived by her husband, W. Raymond Grant. The husband died after filing a petition for leave to appeal from the judgment of the appellate court, and the executor of his estate has been substituted as the appellant in this court. For sake of brevity, we will continue to refer to the husband as a party to this appeal. The decedent's *381 will was admitted to probate on March 1, 1977. Although the will made certain provisions for the surviving husband, he filed a petition renouncing his share of the will and elected to take the share of the estate provided by statute in cases of renunciation (Ill. Rev. Stat. 1977, ch. 110 1/2, par. 2-8). Subsequent to the renunciation, the husband sought an order of apportionment of the Federal estate tax to the balance of the decedent's estate remaining after the deduction of his statutory share and sought to have his share of the estate calculated prior to payment of that tax.
The husband, relying on the principle of equitable apportionment announced in Roe v. Estate of Farrell (1978), 69 Ill.2d 525, argues that it would be inequitable not to do so. The marital deduction, he argues, subtracts from the gross estate of the decedent subject to the Federal tax the value of those assets qualifying as the marital deduction under the Federal tax law. (26 U.S.C. sec. 2056 (1954).) It therefore generates no Federal tax and the Federal estate tax should then be calculated on the remaining estate. The husband argues that by calculating the renouncing spouse's share after payment of this tax the spouse is in fact being forced to bear a portion of the tax. He argues that the theory of equitable apportionment should be employed to rectify the situation.
The Federal estate tax is a tax which is levied against the decedent's estate as a whole. (See People v. Northern Trust Co. (1919), 289 Ill. 475; First National Bank v. Hart (1943), 383 Ill. 489; see generally Annot., 68 A.L.R.3d 714, 785 (1976).) It is thus distinguishable from the inheritance tax, which is levied individually upon each beneficiary in an estate. (See People v. Northern Trust Co. (1919), 289 Ill. 475; First National Bank v. Hart (1943), 383 Ill. 489.) Although the estate tax is paid by the executor, the law of the individual States determines which parties bear the ultimate tax burden. Riggs v. Del Drago (1942), 317 U.S. 95, 87 L.Ed. 106, 63 S.Ct. 109.
*382 As this court noted in Roe v. Estate of Farrell (1978), 69 Ill.2d 525, after the holding in Riggs v. Del Drago, statutes were enacted in many States which provided upon whom the burden of the Federal estate tax would rest. In other States the question of apportionment was resolved by the courts. In Roe v. Estate of Farrell, we acknowledged that a manifestation of legislative intent would be determinative of where the ultimate impact of the Federal estate tax burden would fall, but found no such manifestation in sections 18-10 or 18-14 of the Probate Act of 1975 (Ill. Rev. Stat. 1975, ch. 3, pars. 18-10, 18-14, now Ill. Rev. Stat. 1979, ch. 110 1/2, pars. 18-10, 18-14). Finding nothing in these sections that precluded requiring contribution from surviving joint tenants for their proportionate share of the estate tax, this court apportioned the burden of the tax to nonprobate assets. In Roe v. Estate of Farrell, this court also approved the holding of the appellate court in In re Estate of Van Duser (1974), 19 Ill. App.3d 1022, where it was recognized that a decedent, by a provision in the will, could, by the manifestation of a contrary intention, preclude the application of equitable contribution in the distribution of the Federal estate tax burden. (69 Ill.2d 525, 532.) Thus Roe v. Estate of Farrell recognized two obstacles to the application of equitable apportionment: a manifestation of a contrary intent by the legislature and a manifestation of a contrary intent expressed by a testator in his will.
It is argued by the executor of Nancy M. Grant that section 2-8(a) of the Probate Act of 1975 relating to the renunciation of wills (Ill. Rev. Stat. 1977, ch. 110 1/2, par. 2-8(a)) manifests a clear legislative intent that the share of a surviving spouse who renounces the will be calculated after the deduction of the Federal estate tax, that is, on the value of the net estate. In view of this express legislative intent, the executor argues, the principle of *383 equitable apportionment will not shift the burden of the tax from the renouncing spouse to the recipients of the balance of the estate. Section 2-8(a) provides:
"If a will is renounced by the testator's surviving spouse, whether or not the will contains any provision for the benefit of the surviving spouse, the surviving spouse is entitled to the following share of the testator's estate after payment of all just claims: 1/3 of the entire estate if the testator leaves a descendant or 1/2 of the entire estate if the testator leaves no descendant." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 110 1/2, par. 208(a).
In In re Estate of Comstock (1979), 78 Ill. App.3d 933, the appellate court did not construe the language of section 2-8(a) as requiring that the just claims against the estate be paid before calculating the surviving spouse's share. Rather, the court held that the spouse was entitled to the one-third or one-half of the "entire estate," but that the distribution of the surviving spouse's share would not be made until "after payment of all just claims." We do not find this construction to be in accord with what we perceive to be the intent of the legislature. Similar language to that found in section 2-8(a) is used in section 2-1 of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110 1/2, par. 2-1) with regard to the rules of descent and distribution. It is there provided that the intestate real and personal estate of a decedent, after all just claims against his estate are fully paid, descends and shall be distributed as follows: "(a) If there is a surviving spouse and also a descendant of the decedent: 1/3 of the entire estate to the surviving spouse and 2/3 to the decedent's descendants per stirpes." (Ill. Rev. Stat. 1977, ch. 110 1/2, par. 2-1(a).) If the one-third and the two-thirds interests in the entire estate were to be determined before the payment of all just claims against an estate and only the distribution postponed until after the payment of the claims, there would be no estate out of which to make the payments of the claims. We think plainly under section *384 2-1 of the Act the legislature intended that the claims be paid and the respective interests be calculated from the net estate.
The use of the term "entire estate" in both sections 2-1 and 2-8(a) refers to the entire estate, both real and personal. "Entire estate" is not used to distinguish the quantum of "entire estate" from net estate. Former statutes had different provisions for personalty and real estate and also provided for the assignment of dower. (See Ill. Rev. Stat. 1967, ch. 3, pars. 11, 19.) Instead of now referring to personal estate and real estate, the statute simply refers to "entire estate." However, under the former statutes which provided for dower, the fee interest taken by the heirs was subject to the debts of the decedent. (Anderson v. Shepard (1918), 285 Ill. 544, 548.) The fee interest taken by a surviving spouse under the laws of descent were likewise subject to the claims against the estate, whereas, if the spouse elected to take dower as provided in the Act (Ill. Rev. Stat. 1967, ch. 3, par. 19), her dower interest which was only a life estate was taken free of the claims of the decedent's creditors. (1 James, Illinois Probate Law and Practice sec. 18, at 274 (1951).) In 1971 the legislature abolished the estate of dower. (Ill. Rev. Stat. 1973, ch. 3, par. 18, now Ill. Rev. Stat. 1979, ch. 110 1/2, par. 2-9.) The surviving spouse, upon renunciation, now takes a fee interest which is subject to the claims against the estate.
The language of some of the earlier statutes which specified the interest taken in lieu of dower upon renunciation by a surviving spouse more clearly stated that that interest was to be calculated after payment of debts and claims against the estate.
"If a husband or wife die testate, the surviving husband or wife may, if he or she elect, have, in lieu of dower in the estate of which the deceased husband or wife died seized (whether the right to such dower has accrued by *385 renunciation as hereinbefore provided, or otherwise), and of other rights given by Section 1 hereof, absolutely, and in his or her own right, one-half of all the real and personal estate which shall remain after the payment of all just debts and claims against the estate of the deceased husband or wife, if the deceased shall leave no child or descendant of a child, and one-third of all the real and personal estate which shall remain after the payment of all just debts and claims, if the deceased shall leave a child or descendant of a child." (Emphasis added.) (Ill. Rev. Stat. 1933, ch. 41, par. 12.)
Professor James, in his treatise, states:
"From earliest times, the statutes providing for spousal renunciation, have indicated that the portion to be taken by the renouncing spouse is to be based, not on the gross, but on the net or distributable estate in the hands of the personal representative." (1 James, Illinois Probate Law and Practice sec. 16.23, at 146 (1975 Supp.).)
We cannot read into our present section 2-8(a) of the Probate Act of 1975 a different meaning than that clearly expressed in the earlier statute quoted, or Professor James' interpretation of the earlier statutes. Likewise, the use of similar language in section 2-8(a) to that used in section 2-1 indicates that it is the net estate upon which the spouse's share is to be calculated upon renunciation of the will.
Having reached the conclusion stated, we must consider whether the Federal estate tax, which is questioned in this case, constitutes a claim against the estate. In People v. Pasfield (1918), 284 Ill. 450, 454, this court said, in speaking of the Federal estate tax: "[T]he duty is an expense or a charge against the estate of the decedent." In People v. Northern Trust Co. (1919), 289 Ill. 475, 477, the court again said: "The federal estate tax is a charge or an expense against the estate of the decedent * * *, and as part of the expense of administration this tax should be deducted before computing the State inheritance tax." In People v. McCormick (1927), 327 Ill. 547, *386 561, this court, relying on Pasfield and Northern Trust Co., stated: "A Federal estate tax has been declared by this court in cases referred to, to be a charge of administration." In First National Bank v. Hart (1943), 383 Ill. 489, after noting that this State had no statute relating to the incidence of the burden of the Federal estate tax, stated: "[I]t must therefore fall upon the corpus of the estate and be considered an item of expense, such as debts, funeral expenses, and the like." 383 Ill. 489, 497.) In Northern Trust Co. v. Wilson (1951), 344 Ill. App. 508, the appellate court, citing the above decisions of this court to the effect that a Federal estate tax is a claim against the estate, decided the issue that is before us now and held that a surviving spouse's share upon renunciation of a will must be calculated after the payment of the Federal estate tax.
Section 18-10 of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110 1/2, par. 18-10) classifies claims against a decedent's estate into seven classes. Debts due the United States are designated as third-class claims. Thus under the above decisions, the Federal estate tax, being a claim against the decedent's estate and part of the expenses of administration, would constitute a third-class claim.
The surviving spouse in our case argues that the equitable-apportionment doctrine adopted by this court in Roe v. Estate of Farrell renders obsolete the appellate court holding in Northern Trust Co. v. Wilson. We do not agree. As noted above, this court in Roe v. Estate of Farrell acknowledged two obstacles to the application of the doctrine of equitable apportionment: (1) manifestation of legislative intent to the contrary and (2) a contrary intention expressed by the decedent in a will. Although this court in Roe v. Estate of Farrell found no expression of a contrary legislative intent in sections 18-10 and 18-14 of the Probate Act of 1975, it was not necessary in that case to consider the effect of section *387 2-8(a). The cases discussed above have established that the Federal estate tax is a claim or a charge against the decedent's estate, and section 2-8(a) provides that the renouncing spouse is entitled to the one-third or one-half share provided by statute "after payment of all just claims." In line with the consistent holding by this court that the estate tax is a claim against the estate, we must view the provisions of section 2-8(a) as an expression by the legislature that the surviving spouse's share upon renunciation is not to be relieved of the burden of the tax.
Congress enacted the marital deduction provisions relating to Federal estate taxes in 1948 (26 U.S.C. sec. 2056(d)(3) (1954)), intending thereby to give to the residents of States with property laws such as ours the same relief from Federal estate taxes available earlier in community property States. The provision "after payment of all just claims" now found in section 2-8(a) of the Probate Act of 1975, and other similar language in prior acts, had been a part of our statute providing for spousal renunciation from "earliest times." (1 James, Illinois Probate Law and Practice sec. 16.23, at 146 (1975 Supp.).) However, since these provisions were inserted in our act long before the adoption of the marital-deduction provision, it cannot be said that by the inclusion of this language the legislature intended to affect the tax advantage of the marital-deduction provision. Northern Trust Co. v. Wilson, however, was decided after 1948 and specifically related to the question we now have under consideration. Since the appellate court's construction of this section of the statute in 1951, section 16 of the Probate Act relating to renunciation (Ill. Rev. Stat. 1951, ch. 3, par. 16), now section 2-8(a) of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110 1/2, par. 2-8(a)), has been amended. Prior to January 1, 1972, section 16 provided separately for the share the renouncing spouse *388 would take in the personal estate and the real estate of the decedent. (Ill. Rev. Stat. 1971, ch. 3, par. 16.) Effective on that date an amendment to that section deleted these separate provisions and simply provided that the renouncing spouse would take one-third or one-half of the "entire estate." However, this section continued to provide that the renouncing spouse was entitled to that share only "after payment of all just claims." (Ill. Rev. Stat. 1973, ch. 3, par. 16.) Although the construction contended for has appeal, in light of the previous judicial construction of this section of the Act, the subsequent amendment thereto, and the failure of the legislature to alter the judicial construction previously given to this section, we must assume that the holding of Northern Trust Co. v. Wilson reflects the intention of the General Assembly. Union Electric Co. v. Illinois Commerce Com. (1979), 77 Ill.2d 364, 380.
For the reasons above stated, the judgment of the appellate court is affirmed.
Judgment affirmed.