HARRIS TRUST AND SAVINGS BANK, Trustee, *et al.*, Plaintiffs, *v.* GERALDINE SWIFT TAYLOR *et al.*, Defendants—(JOSEPH L. MACK *et al.*, Defendants-Appellants; GERALDINE SWIFT TAYLOR *et al.*, Defendants-Appellees).

First District (5th Division)  No. 76-661

Opinion filed May 20, 1977.

Joseph L. Mack and Samuel L. Bullas, both of Chicago (Nathan Bennett, of counsel), for appellants.

Winston & Strawn, of Chicago (Calvin Sawyier, Logan T. Johnston, III, and R. David Bergonia, of counsel), for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of Cook County instructing the trustees of seven trusts as to the proper interpretation of a tax apportionment provision common to the seven trust agreements creating their trusts. The only issue raised on appeal is whether the court correctly construed this provision. We affirm.

On December 30, 1933, Geraldine Swift (who subsequently became Mrs. Geraldine Swift Taylor) executed a trust agreement creating an irrevocable inter vivos trust (hereinafter "Taylor trust A"). The sole original trustee of this trust was Gustavus F. Swift, the settlor's father.

After his death in 1943, Harris Trust and Savings Bank (hereinafter "Harris") became the sole successor trustee.

On December 27, 1938, Mrs. Taylor executed a second trust agreement creating another irrevocable inter vivos trust (hereinafter "Taylor trust B"). As with the former trust, the sole original trustee of this trust was Gustavus F. Swift. In contrast to the former trust, after the original trustee's death, Harris, Gustavus F. Swift, Jr., and A. Thomas Taylor (Mrs. Taylor's husband) became successor co-trustees.

Both trust agreements gave the original trustee a discretionary power to accumulate income. These accumulation powers terminated at his death. Thereafter, income from Taylor trust A became payable to Mrs. Taylor. On her death, this income will be payable to her children and per stirpes to their respective lineal descendants if any child of hers has predeceased her or survives her but dies before the termination of the trust. Parenthetically, Mrs. Taylor's children are: Thomas S. Taylor, Geraldine T. McLaughlin, Gustavus F. Taylor and Richard F. Taylor; and the lineal descendants of these children are Fiona M. Taylor, Alexandra T. McLaughlin, Geraldine S. McLaughlin and Peter B. McLaughlin, Jr., all of whom are minors. After the death of the last survivor of Mrs. Taylor, her children and their lineal descendants, this income is payable to her siblings and per stirpes to their respective lineal descendants if any sibling has predeceased this survivor or survives same but dies before the termination of the trust. Mrs. Taylor's siblings are Marie S. Spiel, Jane S. Moore and Gustavus F. Swift, Jr., and the lineal descendants of these siblings are: Robert E. Spiel, Jr.; Richard A. Moore, Jr.; Elizabeth J. Moore, a minor; Matthew S. Moore; Joseph F. Moore; Kate L. Moore; Samuel S. Moore, a minor; Alice S. Reginos; Cynthia Reginos, a minor; Eleanor S. Glass; George B. F. Glass, a minor; and Gustavus F. Swift IV. The income disposition provisions of Taylor trust B differ from those of Taylor trust A in that income beneficiaries of Taylor trust B must exercise a power of withdrawal before income payments are made and any income not distributed is accumulated and added to the trust's principal. In all other respects, the income disposition provisions of the two trusts are virtually identical. When each trust terminates, the principal of each trust is to be distributed to the beneficiaries then entitled to income in the same proportion as that in which income would be distributable.

In 1974, Harris filed a complaint for instructions as to the proper interpretation of certain provisions, including a tax apportionment clause, of the trust agreement creating Taylor trust A. In the same complaint, the successor trustees of Taylor trust B petitioned for instructions as to the proper interpretation of certain provisions, including a spendthrift clause and a tax apportionment clause, in the trust agreement creating Taylor

trust B. After the settlor and the other adult defendants filed separate answers to this complaint, the court appointed guardians ad litem for all minor defendants.

Prior to the filing of this complaint, Mrs. Taylor had informed the successor trustees of Taylor trust B of her intention to relinquish all of her retained interests, rights, powers and privileges in and with respect to Taylor trust B. The successor trustees of Taylor trust B questioned whether such a voluntary alienation was possible in light of the terms of the trust's spendthrift clause. After the guardians filed separate answers to the aforementioned complaint, the court found that such an alienation was possible in an order disposing of this question only. Thereafter, Mrs. Taylor executed a release, renunciation and relinquishment of all rights, titles and interests in and with respect to that trust.

After Mrs. Taylor executed this release, plaintiffs and all adult defendants including the settlor filed a motion for judgment on the pleadings. Memoranda of law were filed by the various parties including one of the guardians and the settlor's siblings thereafter petitioned for entry of a supplementary decree adjudging that the court's rulings are equally applicable and binding in respect to six other trusts they created. In their petition the siblings stated that Marie S. Spiel executed a trust agreement on December 30, 1933, which is identical to the trust agreement executed the same day by Mrs. Taylor, and thereby created an "A" trust which is identical to Taylor trust A. The petition further stated: (1) that Jane S. Moore executed a trust agreement on December 23, 1938, which is substantially identical to the trust agreement creating Taylor trust A, and thereby created a trust (hereinafter "Moore trust A") which is substantially identical to Taylor trust A; (2) that Gustavus F. Swift, Jr., executed a trust agreement that same day which is identical to the one executed by Jane S. Moore, and thereby created an "A" trust which is identical to Moore trust A; and (3) that on December 27, 1938, each of the three siblings executed a trust agreement identical to the one executed that day by Mrs. Taylor, and thereby created trusts (hereinafter respectively "Spiel trust B," "Moore trust B" and "Swift trust B") identical to Taylor trust B. The siblings then requested instructions as to the proper interpretation of those provisions of the trust agreements they executed having Taylor trust counterparts which the court had been asked to construe. One of these provisions is the tax apportionment clause of the trust agreements executed by the siblings.

In response to the foregoing, the court entered an order in which it concluded that all eight trusts contained the following tax apportionment provision:

"If any estate, inheritance or other succession taxes or duties or

"transfer charges are assessed in connection with any distribution of income or principal hereunder, they shall be paid by the trustee or successor trustee out of the principal of the trust estate."

The court went on to find as a matter of law that upon the death of a settlor, if trust assets are included in his gross estate for estate or inheritance tax purposes, then there should be apportionment of such taxes and the trust is obligated to pay its proportionate share out of the principal of the trust estate. The court also found as a matter of law that such apportionment between nonprobate or trust assets taxed in the settlor's estate and the settlor's probate assets is fair, equitable and called for by the settlor's express language. The court concluded that the apportionment of taxes between the trusts and the estates of the settlors should be on the basis of the value of the trust assets included in the taxable estates compared to the value of all assets included in the taxable estates. The court additionally concluded that Mrs. Taylor's execution of a release, renunciation and relinquishment of all rights, titles and interests in and with respect to Taylor trust B nullified any right Mrs. Taylor had under the tax apportionment clause of that trust. The court then instructed the trustees of the four A trusts and of Spiel trust B, Moore trust B and Swift trust B that: (1) if any trust assets are included in a settlor's gross estate for estate or inheritance tax purposes upon the death of a settlor of any of these seven trusts, the estate of the deceased settlor has the right to require the trust to contribute its proportionate share of the estate or inheritance taxes providing such right was not released or relinquished by the settlor; (2) the amount of the contribution by the trust shall be determined on the basis of the value of the trust assets included in the gross estate compared to the value of the total gross estate; and (3) the tax contribution is payable out of principal and not out of income. The court reserved jurisdiction over the remaining issues and directed the guardians to appeal from this order. This appeal followed.

OPINION

The guardians ad litem urge that the tax apportionment provision in question neither authorizes nor requires payment of a proportionate share of estate or inheritance taxes upon inclusion of trust assets in the settlor's gross estate. In support of this contention they offer three arguments which merit discussion. The first begins with the assertion that the trust instruments were drawn by experienced counsel and the observation that the settlor's death taxes are not expressly referred to in the tax apportionment clause in question. The guardians submit that if it had been the settlor's intent to have the trust pay such taxes, the draftsman would have been instructed to expressly state that the settlor's death taxes were chargeable to the trust and, if so instructed, the draftsman would

have so stated. The guardians conclude that the absence of such an express direction clearly indicates that the settlor never instructed the draftsman to provide for payment of such taxes out of trust funds and clearly indicates a lack of intent to have such a payment made. Evidently the guardians failed to perceive that the tax apportionment clause in question also does not expressly refer to beneficiaries' death taxes. If the absence of an express direction to pay the settlor's death taxes indicates a lack of intent to have such a payment made, then it follows that the lack of an express direction to pay beneficiaries' death taxes indicates a lack of intent to have the trust pay the beneficiaries' death taxes. Taking the guardians' position and its logical extension together, it follows that the tax apportionment clause in question is a nullity and indicates a lack of intent to have the trust pay any death taxes. We believe that the very presence of the tax provision indicates an intention to have the trust pay some death taxes on some occasion. Since the guardians' position leads to the opposite conclusion, we find it unpersuasive.

■■ The guardians' second argument pertains to the word "if" at the beginning of the tax apportionment clause in question. They point out that "if" indicates uncertainty and that there is no uncertainty regarding death and payment of death taxes by the settlor's estate. They argue that the draftsman knew that the settlor must eventually die and that estate taxes would thereafter have to be paid by settlor's estate, and since the taxes referred to following the "preposition 'if' " make no reference to the settlor's death taxes or the settlor's death, it follows "ineluctably" that only beneficiaries' death taxes are included among those referred to in the tax apportionment clause in question. We disagree. If the draftsman is chargeable with the knowledge that the settlor must eventually die, then he is equally chargeable with knowledge that the beneficiaries must eventually die. Despite the certainty of both the settlor's eventual death and the eventual demise of all beneficiaries, neither the settlor nor the beneficiaries are expressly referred to in the tax provision. It follows "ineluctably" that the tax provision refers to neither the settlor's nor the beneficiaries' death taxes. If the provision refers to neither the settlor's nor the beneficiaries' death taxes, then it is a nullity. If the provision is a nullity, then why do we find it in the trust instrument? Would an experienced draftsman draft a null and void tax apportionment provision? We think not. Moreover, as used in the provision in question, "if" is a subordinating conjunction which introduces a subjunctive clause and means "in the event that." (Webster's Third New International Dictionary 1124 (unabr. ed. 1976); The American Heritage Dictionary 654 (1970).) So used, the uncertainty "if" indicates pertains to the occurrence of the assessment mentioned in the following subjunctive clause. As used in this subjunctive clause, the "any" which follows "if" is an adjective

which modifies estate taxes, inheritance taxes, other succession taxes, duties and transfer charges which are assessed in the manner described by the remainder of the clause. The guardians' second argument fails to persuade us that this use of "any" does not bring the settlor's death taxes within the parameters of the tax provision in question.

■■■ The guardians' third argument pertains to the last portion of the subjunctive clause in the tax apportionment provision. The guardians argue that since the settlor's right to income terminates upon death and since the settlor retains no right to receive any principal, upon settlor's death there is no distribution of income or principal under the trust which would cause a death tax assessment, therefore only successor beneficiaries can be covered by: "assessed in connection with any distribution of income or principal hereunder." We disagree. Not only the settlor's income interest, but also all successor income beneficiaries' income interests appear to terminate upon their respective deaths. Following the guardians' reasoning, it would seem that only holders of principal interests can be covered by this passage. If this was the settlor's intention, then why does the term "income" appear in this passage? We believe that this argument, like its predecessors, proves too much. One of its other flaws is that it overlooks the redistribution of income interest upon settlor's death. Furthermore, a court's first concern in the construction of a trust is to ascertain the intent of its creator and give effect to that intent if it does not conflict with the law or public policy of the State. (See *2416 Corp. v. First National Bank* (1976), 64 Ill. 2d 364, at 371-72, 356 N.E.2d 20.) This intent must be gathered from the entire instrument evidencing the trust and if the language used therein, in its ordinary sense, is plain and its meaning is clear, and if the settlor's actual intent can be ascertained therefrom without reference to rules of construction which are used to affix a presumed intent, we must construe the trust so as to give effect to the actual intent expressed by the trust instrument's language. (See *2416 Corp. v. First National Bank; Storkan v. Ziska* (1950), 406 Ill. 259, 263-64, 94 N.E.2d 185; *Continental Illinois National Bank & Trust Co. v. Griffin* (1970), 124 Ill. App. 2d 334, 337, 260 N.E.2d 281.) We believe that the language used in the tax apportionment provision in question, taken in its ordinary sense, is clear and unambiguous and that the settlor's intent can be ascertained therefrom without reference to rules of construction. We further believe that the court below correctly interpreted this language. There is more than one way to express an intention to have death tax burdens apportioned (compare *Lipic v. Wheeler* (1951), 362 Mo. 499, 242 S.W.2d 43, with *Union Trust Co. v. Watson* (1949), 76 R.I. 223, 68 A.2d 916), and this language expresses such an intention on its face.

The other contentions submitted by the guardians involve either rules

of construction used to affix presumed intention in the absence of an expression of actual intention, or rules of law which operate in the same context such as the doctrine of equitable apportionment discussed in *In re Estate of Van Duser* (1974), 19 Ill. App. 3d 1022, 313 N.E.2d 228, and *In re Estate of Phillips* (1971), 1 Ill. App. 3d 813, 275 N.E.2d 685. Our conclusions render these contentions inapposite. Accordingly, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

LORENZ and MEJDA, JJ., concur.