EUGENE MARK FREDERICK, Plaintiff-Appellant, v. JOSEPH P. LEWIS *et al.*, Defendants-Appellees.

Fourth District   No. 4—87—0474

Opinion filed December 31, 1987.—Rehearing denied January 28, 1988.

Robert E. Martensen, of Martensen, Andrew & Niemann, of Paxton, for appellant.

Philip A. Summers, of Summers, Watson & Kimpel, of Champaign, for appellees Joseph P. Lewis, John D. Lewis, Christine A. Hoban and Patricia L. Dalton.

JUSTICE LUND delivered the opinion of the court:

Plaintiff Eugene Mark Frederick appeals from an order of the circuit court of Ford County which ordered partition of 240 acres of land but denied Frederick's request that a lien for Federal estate tax, resulting from the death of Hazel L. Martin, attach to the various interests in the 240 acres. He also appeals from orders in consolidated small claims cases which required defendants to reimburse the trust for a share of the crop expenses attributable to the 240 acres but denied his request for reimbursement to the trust for the proportionate share of Illinois inheritance tax attributable to the 240 acres which the trust paid. The denial of the requests to establish the liens and order reimbursement are the subjects of this appeal.

In 1935, Hazel L. Martin deeded the 240 acres to her sons, Eugene Mark Frederick and Sherman Frederick, retaining a life estate. In 1968, Sherman conveyed his one-half remainder interest to his then father-in-law and mother-in-law, Perley M. Lewis and Mildred C. Lewis. In 1982, Perley and Mildred conveyed their remainder interest to their four children, Joseph P. Lewis, John D. Lewis, Christine A. Hoban, and Patricia L. Dalton, all four now being parties to the partition action.

Prior to her death, Hazel L. Martin executed a revocable living trust which named Eugene Mark Frederick as trustee. The trust provided that upon the settlor's death, one-half of the assets were to go to settlor's son Eugene, and the other one-half was to stay in a spend-

thrift-like trust for the lifetime and benefit of her son Sherman. Most of Hazel L. Martin's assets were placed in the trust, and at her death on February 12, 1985, there were insufficient assets in her separate estate to pay the Federal estate tax of $56,348.89 and the Illinois inheritance tax of $12,205.64. The 240 acres, which is the subject of the partition action, was part of the decedent's taxable gross estate, and $19,052.92 of the Federal estate tax and $4,707.05 of the Illinois inheritance tax is attributable to this property.

The trustee of the Hazel L. Martin trust has paid all the Illinois inheritance tax and all the Federal estate tax except for $19,052.92. Frederick contends the $19,052.92 must be apportioned to the various interests of the 240 acres and that these interests should reimburse the trust for the proportionate share of the Illinois inheritance tax attributable to the land, and the owners, other than Frederick, contend the Federal estate tax and Illinois inheritance tax should be paid in full by the trust. The trial court ruled against Frederick's position.

The Internal Revenue Code contains no express provisions for contribution from persons acquiring nonprobate assets to satisfy the estate tax if the executor is able to satisfy all or a portion of the tax out of probate assets, except in certain cases. (*Roe v. Estate of Farrell* (1978), 69 Ill. 2d 525, 529-30, 372 N.E.2d 662, 664.) The United States Supreme Court has made clear that the States are free to apportion the ultimate burden or "ultimate impact" of the estate tax. *Riggs v. Del Drago* (1942), 317 U.S. 95, 97-98, 87 L. Ed. 106, 110-11, 63 S. Ct. 109, 110.

■■ It is well settled in Illinois that in an intestate estate, the tax burden should be equitably apportioned between probate and nonprobate assets. (*Roe*, 69 Ill. 2d at 532, 372 N.E.2d at 665.) Similarly, it is settled that in a testate estate, absent directions from the decedent, an apportionment of Federal estate tax liability must be made. *In re Estate of Gowling* (1980), 82 Ill. 2d 15, 22, 411 N.E.2d 266, 269.

The ultimate question in this case then is whether the decedent gave specific directions for the trust to pay the tax. The will provides:

> "As soon as practical after my death, my Executor may pay those of my just debts, costs of last illness, funeral expenses, taxes and costs of administration as are required to be paid by law, out of the residue of my estate, provided, however, that if at the time of my death there is in existence a Revocable Living Trust created by me during my lifetime my Executor may seek from the Trustee of said Trust such portion of the above as the Executor deems appropriate and if said Trust holds any bonds commonly known as 'Flower Bonds' the Trust shall be

required to expend such bonds in payment of Federal estate taxes."

The trust contains no specific instructions concerning payment of estate taxes. The only clause dealing with payment of taxes gives the trustee authority:

"To pay or compromise all costs, taxes, charges and expenses *as to the Trust Estate,* together with reasonable compensation and commissions to the Trustee for its services hereunder." (Emphasis added.)

Defendants assert that these clauses constitute specific instructions by the testator for the executor to pay all the taxes from the trust. Frederick argues that the will directs the executor to pay the taxes from the residue and further directs that the executor may seek funds from the trust to pay these expenses as he deems appropriate. He states he could have paid the entire tax from the trust. However, he asserts that it was not deemed appropriate that the trust should pay the tax created by inclusion of the farm. Therefore, since the decision is his to make, the will does not explicitly direct the trust should pay the expenses. Accordingly, he asserts the analysis in *Gowling* applies, and the tax should be apportioned accordingly.

We disagree with both positions. The trust agreement was executed by Hazel L. Martin on October 10, 1980. The last will and testament admitted into evidence was dated October 17, 1984, as was a first amendment to the trust. The trust amendment only made changes as to certain beneficiary age requirements and the name of a successor trustee. The last will and testament provided a pour-over into the October 10, 1980, trust. The trust agreement did not provide for amendment by the settlor's last will and testament.

■ The powers given the executor of the will are not added to the powers of the trustee. The trust was a separate entity and was necessarily controlled by its own terms. The construction given terms of a trust are basically controlled by the same rules applying to wills, with the intention of the settlor or testator being of supreme importance. (*In re Estate of Trager* (1952), 413 Ill. 364, 367, 108 N.E.2d 908, 910; *In re Estate of Cancik* (1985), 106 Ill. 2d 11, 17, 476 N.E.2d 738, 741.) This intention is ascertained from the four corners of the instrument (*Trager*, 413 Ill. at 367, 108 N.E.2d at 910; *Richardson v. Roney* (1943), 382 Ill. 528, 532, 47 N.E.2d 714, 716) and is to be gathered from the will as a whole. (*In re Estate of Bridges* (1983), 95 Ill. 2d 383, 390, 447 N.E.2d 830, 833; *Feder v. Luster* (1973), 54 Ill. 2d 6, 10, 294 N.E.2d 293, 295.) This should be done by giving every word, phrase and clause in the instrument effect, if possible. *Bridges*, 95 Ill.

2d at 390, 447 N.E.2d at 833; *Feder*, 54 Ill. 2d at 11, 294 N.E.2d at 295.

There is no specific provision in the trust for payment of estate expenses or death taxes. The provision cited, when examined in total, appears to apply more to costs, tax charges, and expenses normally incurred in the day-to-day operation of the trust than to expenses and taxes resulting from the settlor's death. At the most, it allows payment "as to the Trust Estate," not as to assets outside the trust.

■■ We recognize that the settlor had conveyed her life-estate interest in the 240 acres into the trust, but this interest no longer existed after settlor's death. The value required to be added to the gross taxable estate was not the value of the life estate but was the market value of the 240 acres at date of death. We conclude that the ownership of the 240 acres was no longer an asset of the trust estate at the moment after settlor's death. As stated, no authority is given to pay taxes relating to nontrust estate assets.

■■ At the time of Hazel L. Martin's death, the trust became irrevocable, and there were insufficient assets in her estate to pay Federal estate and Illinois inheritance taxes. The trust is not required to pay all the Federal estate and Illinois inheritance taxes. The taxes are then to be apportioned. The trial court must make provisions for this apportionment in the partition and small claim proceedings.

The trial court's judgments are reversed only as to that provision relating to the apportionment of the Federal estate and Illinois inheritance taxes.

Reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

KNECHT and SPITZ, JJ., concur.