# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 04-3800

ANN LURIE, Executor of the estate
of ROBERT H. LURIE, deceased,

*Petitioner-Appellant*,

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee*.

Appeal from the United States Tax Court
No. 22639-94.

ARGUED JUNE 6, 2005—DECIDED SEPTEMBER 30, 2005

Before ROVNER, WOOD, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* This case is an example of how the best laid plans of mice and men can often go awry. Prior to his passing, the decedent, Robert H. Lurie, planned for the bulk of his wealth to be excluded from federal estate taxes and passed through various trust instruments set up for the benefit of his wife and children. The Commissioner of Internal Revenue, however, determined that the trusts formed for the benefit of the children, valued at approximately $40,471,059, should be included in Lurie's gross estate for tax purposes. This determination left the funds remaining in the probate estate insufficient to pay the estate tax deficiency, calculated by the Tax Court to be

$12,214,209.42. The estate does not appeal the calculations of the Tax Court, but only appeals the Tax Court's ruling that the deficiency, as well as the legal costs arising from this dispute, must be paid by the executor, Mrs. Ann Lurie, out of the trust set up for Mrs. Lurie's benefit, instead of out of the trusts set up for the decedent's children that generated the tax deficiency. We agree with the ruling of the Tax Court and, therefore, affirm.

## I.  BACKGROUND

The underlying facts in this case are undisputed. Robert Lurie ("decedent") died on June 20, 1990, leaving assets worth approximately $130 million. He was survived by his wife, Ann Lurie, and six children, who were minors when he died.

In May 1969, at the start of Robert Lurie's career, his mother created ten trusts which came to be known as the Robert Lurie Family Trusts ("the LF Trusts"). Lurie had a limited power of appointment over the LF Trusts, and exercised that power in February 1990 to create six new trusts, one for the sole benefit of each of his six minor children. The six new trusts received all of the assets of the LF Trusts. Lurie also held a power of appointment with respect to ten trusts, known as the "RD" trusts. Lurie exercised his power of appointment over the RD trusts and created ten new trusts to succeed and receive the assets of the RD trusts. Both parties and the Tax Court referred to the LF Trusts, the RD Trusts, and their successor trusts collectively as the "Notice Trusts."

Lurie created the Revocable Trust, of which he was both grantor and trustee, on December 19, 1989, three days before he executed his will. The Revocable Trust Agreement provides that upon Lurie's death the assets of the Revocable Trust would be allocated between a "Marital Trust" and a nonmarital "Residuary Trust." Article III of the trust

instrument deals with the creation of the Marital Trust. Specifically, the allocation provision states in relevant part:

> 3.2 Amount of Allocation to Marital Trust. The allocation herein to the Marital Trust shall have a value equal to the smallest pecuniary amount which, if allowed as a federal estate tax marital deduction, would result in the least federal estate tax being payable by reason of the Grantor's death, taking into account the maximum available unified credit and the credit for state death taxes, but only to the extent that those state death taxes are not thereby increased.

The Residuary Trust is established pursuant to section 4.2. Section 4.2 provides that, upon Lurie's death, the remainder of the trust estate not allocated to the Marital Trust or used for the payment of the debts and expenses of Lurie's estate was to be allocated into a Residuary Trust for the benefit of Mrs. Lurie and his children.

Section 4.1 of the Revocable Trust instrument provides that if the residue of the probate estate was insufficient, then any remaining expenses from the administration of his estate were to be paid from the Revocable Trust. In relevant part:

> 4.1 Debts and Taxes. Upon the death of the Grantor, the Trustee shall, to the extent that the assets of the Grantor's estate . . . are insufficient, pay . . . reasonable expenses of administration of his estate . . . all income, estate, inheritance, transfer and succession taxes, including any interest and penalties thereon, which may be assessed by reason of the Grantor's death, without reimbursement from the Grantor's Executor or Administrator, from any beneficiary of insurance upon the Grantor's life, or from any other person. . . . All such payments shall be charged first against the principal of the trust estate. . . .

Lurie executed his will on December 22, 1989. Mr. Lurie's will directs that his personal effects be distributed to his wife and that any residuary, after payment of debts, funeral expenses, costs of administration, taxes and legal expenses, be distributed to the Revocable Trust. The will references the Revocable Trust Agreement and states that the trust agreement governs the administration and distribution of the residue estate which includes the payment of estate taxes and legal fees ordinarily payable from the residue estate. *See* Section 2.1 of the Will of Robert Lurie dated December 22, 1989.

At Lurie's death, the value of his probate estate was $760,253. The value of the Revocable Trust at his death was $88,659,780. In accordance with the decedent's will, his personal effects valued at $12,470 were bequeathed to his wife, leaving a residuary probate estate of $747,783. After payment of funeral expenses and administrative expenses, the residue of the probate estate was distributed to the Revocable Trust. Lurie had made gifts during his lifetime which fully absorbed the unified credit, so the nonmarital Residuary Trust was never formed, and the Revocable Trust distributed all of its assets to the Marital Trust for the benefit of Mrs. Lurie. On its federal estate tax return, the estate reported a gross estate of $91,712,318, which did not include the value of any of the Notice Trusts. The estate claimed a marital deduction in the amount of $91,682,908, and other deductions in the amount of $29,410, resulting in a taxable estate of zero.

Upon an audit by the Internal Revenue Service, the Commissioner of Internal Revenue determined that the Notice Trusts should have been included in the decedent's gross estate and, as a result, calculated a $47,459,641 deficiency in the decedent's taxable estate. The increase in the taxable estate unsurprisingly led to an estate tax deficiency, which in turn left the residual probate estate insufficient to the outstanding expenses of the estate. The

estate then petitioned the Tax Court for a redetermination.

Before the Tax Court, the parties eventually stipulated that the Notice Trusts would be included in the decedent's gross estate at a total value of $40,461,079, but left it to the Tax Court to decide whether the resulting estate taxes, payable as a result of including the value of the Notice Trusts in the decedent's gross estate, were payable from the Revocable Trust assets that otherwise would have gone to the Marital Trust, or from the Notice Trusts that generated the tax. In addition, the parties left it to the Tax Court to decide whether the legal costs associated with the audit and the ensuing litigation should be paid by the Revocable Trust or the Notice Trusts.

The Tax Court found that section 4.1 of the Revocable Trust instrument provided for payment of estate taxes and legal costs if the residuary probate estate was insufficient, and that, in accordance with that provision, the estate taxes and legal costs should be paid out of Revocable Trust assets that otherwise would go to the Marital Trust. The Tax Court calculated the estate tax deficiency to be $12,214,209.92.

## II. ANALYSIS

The standards of review governing the review of a decision by the Tax Court are the same as those governing the review of a district court determination in a civil bench trial. 26 U.S.C § 7482(a). Questions of law are reviewed *de novo*; the Tax Court's factual determinations, as well as the application of legal principles to those factual determinations, are reviewed only for clear error. *Pittman v. Comm'r of Internal Revenue*, 100 F.3d 1308, 1312-13 (7th Cir. 1996).

Section 2001 of the Internal Revenue Code (I.R.C.)[1] imposes a tax "on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States." In computing the taxable estate, the I.R.C. provides for a marital deduction that permits an estate an unlimited deduction from the gross estate for the value of any property that passes from a decedent to the decedent's spouse. I.R.C. § 2056. The estate then is only required to pay estate tax on transfers not qualifying for the marital deduction, such as transfers to beneficiaries other than the surviving spouse. I.R.C. § 2056(b)(4). Typically, the resulting estate tax is paid from property that otherwise would pass to the surviving spouse, thereby reducing the marital deduction by that amount of federal estate tax. State law controls, however, how the estate tax burden is allocated among the assets of an estate. *Riggs v. del Drago*, 317 U.S. 95, 101 (1942). Here, the decedent was domiciled in Illinois when he died, so Illinois law governs how his estate tax is to be allocated. *Doetsch v. Doetsch*, 312 F.2d 323, 328 (7th Cir. 1963).

Illinois has no statute specifying which assets of the taxable estate bears the burden of any estate tax, but the default rule in Illinois is the rule of equitable apportionment, which means that the burden of estate taxes is allocated *pro rata* to the portions of the taxable estate that generated the tax. *See Roe v. Farrell's Estate*, 372 N.E.2d 662, 665 (Ill. 1978) (applying the rule of equitable apportionment to an intestate estate, where a person dies without leaving a valid will). "[L]ogic, reason, and simple justice dictate that, unless there is a contrary intention expressed by the decedent, as in a will in testate estates, the doctrine of equitable contribution should be invoked as to nonprobate assets to fairly distribute the federal

---

[1] I.R.C. references are to the Internal Revenue Code of 1986 (26 U.S.C.) in effect as of the date of the decedent's death.

estate tax burden." *Roe*, 372 N.E.2d at 665 (quoting *In re Estate of Van Duser*, 313 N.E.2d 228, 229 (Ill. App. Ct. 1974)); *see also In re Estate of Gowling*, 411 N.E.2d 266, 269 (Ill. 1980) (applying the rule of equitable apportionment in a testate estate, where a person dies with a valid will).

This leads to the ultimate question in this case: whether the decedent expressly intended not to have the rule of apportionment apply. The estate argues that since the decedent did not leave specific instructions in his will negating equitable apportionment in the event the residuary probate estate was insufficient to cover estate taxes, then the rule of apportionment should apply. A closer reading of the will, however, leads us to believe that the will is not silent.

The decedent's will specifically references the Revocable Trust Agreement and directs that the Revocable Trust Agreement governs the administration and distribution of the residue estate. *See* Section 2.1 of the Will of Robert Lurie dated December 22, 1989. The administration of the decedent's residue estate includes the payment of estate taxes and legal fees ordinarily payable from the residue estate, and section 4.1 of the Revocable Trust Agreement specifically details that the Revocable Trust shall, "to the extent that the assets of the Grantor's estate . . . are insufficient, pay the . . . reasonable expenses of administration of his estate." Thus, we find that the decedent in his will gave specific instructions as to how the residual estate was to be administered and how the expenses of his estate were to be handled in the event the residue estate was insufficient and sufficiently intended to negate the default rule of apportionment.

The estate also argues that the Tax Court erred in reviewing both the valid will and a trust agreement left by the decedent in order to conclude that the decedent intended to negate apportionment. The estate contends that

the Tax Court did not heed "the established Illinois rule" that the decedent's intent as to the source of assets to be used for payment of estate taxes and whether to negate the doctrine of equitable apportionment can *only* be determined from his will. *See* Appellant's Opening Brief at 13 (emphasis added). We find that this argument overstates Illinois law.

We find that case law in Illinois has merely recognized that a decedent can avoid the application of equitable apportionment by expressing the intent not to have apportionment apply in his will. *Roe*, 372 N.E.2d at 665; *In re Estate of Grant*, 415 N.E.2d 416, 417 (Ill. 1980). We have found no case in Illinois instructing us that we must limit our search for the decedent's intent to negate equitable apportionment to only the decedent's will. Our review of Illinois law leads us to conclude that the decedent's intent as expressed in the language of a will or a trust instrument can control both what source of assets shall be used to pay estate taxes and whether equitable apportionment applies. *See, e.g.*, *Harris Trust & Sav. Bank v. Donovan*, 582 N.E.2d 120 (Ill. 1991) (construing both a trust instrument and a will to determine that decedent's "illegitimate" children, as defined by both the will and trust agreement, were disinherited by necessary implication); *Frederick v. Lewis*, 517 N.E.2d 742 (Ill. App. Ct. 1988) (construing the terms of a trust agreement to determine that the trust instrument did not negate apportionment); *Harris Trust & Sav. Bank v. Taylor*, 364 N.E.2d 349, 354 (Ill. App. Ct. 1977) (construing the language of a trust instrument to determine an intent to preclude apportionment).

In *Donovan* the issue before the court was whether the "illegitimate" children of the decedent were entitled to any interest in the family trust established by the decedent. 582 N.E.2d at 121. The decedent executed both a trust instrument and a will within three days of each other, and

the court reviewed both instruments to determine whether the decedent's "illegitimate" children, as defined by both the will and trust agreement, were disinherited by necessary implication. 582 N.E.2d at 123. In construing both the trust agreement and the will, the court stated:

> If possible, the court should construe the will or trust so that no language used by the testator is treated as surplusage or rendered void or insignificant. . . . Every word, phrase and clause in a will should be given effect, if possible, and where one construction of a will would render a portion of [the trust agreement] meaningless and another construction would give effect to all provisions and all language, the construction giving effect to the latter construction will be adopted.

582 N.E.2d at 123 (quotes and citations omitted).

The estate argues that *Donovan* is inapplicable to this case because the court in *Donovan* looked to determine the intent of the decedent to disinherit, whereas in this case we are faced with discerning the intent of the decedent to apportion estate taxes. We find this distinction to be of no consequence as simply discerning the decedent's intent is the primary concern under Illinois law. We have not found a case, and the estate does not cite a case, instructing us that it makes a difference under Illinois law whether a court is searching for the decedent's intent to disinherit or intent not to apportion taxes. Accordingly, *Donovan* exemplifies how a court applying Illinois law and attempting to determine the decedent's intent can consider both a trust agreement and a will.

In *Frederick*, the appellate court considered whether a trust instrument provided specific instructions for paying estate tax, and the *Frederick* court's sole reason for examining the trust instrument was to decide the decedent's intention regarding the source of payment of tax. 517

N.E.2d at 744 ("The ultimate question in this case is whether the decedent gave specific directions for the trust to pay the [estate] tax."). In construing the terms of the trust agreement, the court in *Frederick* stated:

> The construction given terms of a trust are basically controlled by the same rules applying to wills, with the intention of the settlor or testator being of supreme importance. . . . This intention is ascertained from the four corners of the instrument . . . and is to be gathered from the will as a whole. . . . This should be done by giving every word, phrase and clause in the instrument effect, if possible.

517 N.E.2d at 744. Although the court in *Frederick* ultimately concluded the trust instrument did not negate apportionment, the court made it clear that, under Illinois law, a decedent's intent as expressed in a trust instrument is relevant and can negate equitable apportionment.

In *Taylor*, the trustees of seven trusts joined in a complaint requesting instructions as to the proper interpretation of a tax apportionment provision common to the seven trust agreements. 364 N.E.2d at 351. The common tax apportionment provision provided:

> If any estate, inheritance or other succession taxes or duties or transfer charges are assessed in connection with any distribution of income or principal hereunder, they shall be paid by the trustee or successor trustee out of the principal of the trust estate.

364 N.E.2d at 352. In reviewing the language of the trust agreements, the appellate court held that the language used in the tax apportionment provisions in question was sufficient to express an intention to have estate tax burdens apportioned. 364 N.E.2d at 354.

The estate has failed to cite a single Illinois case which holds that a court can *only* look to the decedent's will to

determine whether the decedent intended to negate equitable apportionment. Thus, we conclude that the Tax Court properly considered both the trust instrument and the decedent's will in order to discern the decedent's intent to negate the rule of apportionment.

The estate also argues that if it was proper for the Tax Court to consider the Revocable Trust Agreement, then the Tax Court did not properly analyze the instrument. Specifically, the estate argues that a review of the Revocable Trust Agreement as a whole discloses the decedent's "unmistakable" intent to maximize the marital deduction, an intent inherently at odds with the waiver of equitable apportionment. *See* Appellant's Opening Brief at 28. The estate contends that the Revocable Trust Agreement in section 3.2 plainly communicates the decedent's intent to maximize the marital deduction and not reduce it by the payment of estate taxes.

We find that section 3.2 of the trust instrument contains no express language of the decedent's intent not to reduce the Marital Trust by the payment of estate taxes and contains no language barring the executor from using trust estate funds otherwise eligible for the Marital Trust for the payment of estate taxes. Contrary to the estate's argument, the express intent of section 3.2 is to maximize the amount of the marital trust allowable under the federal estate tax laws. Thus, section 3.2 anticipates that federal estate taxes will be paid, and then creates a Marital Trust up to the maximum allowed under the tax laws.

Construing section 3.2 as maximizing the Marital Trust to the exclusion of federal estate taxes, as the estate suggests, would allow the Marital Trust to consume the entire Revocable Trust rendering section 4.1 surplusage. A proper construction of section 3.2 as simply allocating for a Marital Trust consistent with federal estate tax law then enables section 4.1 to pay all income, estate, inheri-

tance, transfer and succession taxes from the Revocable Trust to the extent that the assets of the decedent's estate are insufficient.

It is clear that the decedent did not anticipate that the Notice Trusts would be included in his gross estate, and it is very likely that the decedent would have laid out his estate plan differently had he or his attorneys considered this possibility. We cannot, however, rewrite the decedent's will or trust agreement to give effect to what the decedent would have done. Under Illinois law and the law of this circuit, the intent that we seek to enforce is not that presumed to have been in the decedent's mind, but rather the intent that is expressed in the four corners of the documents in question. *See Smith v. United States*, 801 F.2d 975, 977 (7th Cir. 1986) (quotations and citations omitted) (interpreting Illinois law); *Weir v. Leafgreen*, 186 N.E.2d 293, 296 (Ill. 1962).

Finally, we find that the Tax Court correctly determined that the legal costs associated with the audit and this litigation should be paid from the assets of the Revocable Trust. Again, section 4.1 of the Revocable Trust Agreement directs that if the assets of the residuary probate estate are insufficient, then the remaining administration costs of the estate are to be paid from the assets of the Revocable Trust. Since legal costs are considered administration costs under Illinois law, *see In re Rolley*, 520 N.E.2d 302, 303 (Ill. 1998) (describing legal fees as costs of administration of an estate); *In re Desisles' Estate*, 208 N.E.2d 122, 125 (Ill. App. Ct.1965) (costs of administration include legal fees), the Tax Court was correct in directing the legal costs associated with this litigation to be paid out of the Revocable Trust.

## III. CONCLUSION

For all the foregoing reasons, the decision of the Tax Court is AFFIRMED.

No. 04-3800 13

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*